2022 IL App (1st) 201039-U

No. 1-20-1039

Filed April 21, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 1000 |
| | ) | |
| ANTONIO RICHMOND, | ) | Honorable |
| | ) | Dennis J. Porter |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1  *Held*: A provision of the Truth in Sentencing Act, requiring a person convicted of first degree murder to serve their entire prison term, violates neither the United States nor Illinois constitutions as applied to petitioner, who committed a murder at age 17 and was sentenced to a prison term of 40 years.

¶ 2  Antonio Richmond appeals from the circuit court's summary dismissal of his postconviction petition. Richmond was convicted after a bench trial of the first degree murder of his two-month-old son, Antonio Jr., and sentenced to a prison term of 40 years in the Illinois Department of Corrections (IDOC). Richmond was 17 years old at the time of the offense. His petition, filed *pro se* in 2020, claimed that a provision of the Unified Code of Corrections (730

ILCS 5/3-6-3(a)(2)(i) (West 2002)), added in 1998 by the Truth in Sentencing Act (Pub. Act 90-592, § 5 (eff. Jun 19, 1998)), that requires he serve his full prison term is unconstitutional as applied to him under the eighth amendment to the United States Constitution. Richmond's petition relied on this court's opinion in *People v. Othman*, 2019 IL App (1st) 150823, ¶¶ 90-109 (*Othman I*), *vacated in part by* No. 125580 (supervisory order Jan. 9, 2020), which held that the Truth in Sentencing Act violates the eighth amendment as applied to juvenile offenders. For relief, Richmond requested that his sentence be modified such that he would receive day-for-day good conduct credit. In a written order, the circuit court noted that the Illinois Supreme Court vacated the portion of *Othman I* that Richmond relied on, and that this court has rejected similar challenges to the Truth in Sentencing Act. Accordingly, the circuit court found that Richmond had not stated an arguable claim and dismissed his petition as patently without merit. We affirm.[1]

¶ 3                                 I. BACKGROUND

¶ 4        Trial evidence demonstrated that, on the evening of November 30, 2002, 17-year-old Richmond was at his home with his two-month-old son, Antonio Jr. Richmond was on house arrest stemming from a prior burglary conviction. The baby's 15-year-old mother had gone to a movie theater. Richmond called 911 shortly before 10 p.m., reporting that Antonio Jr. was unresponsive. Paramedics found Antonio Jr. limp, unresponsive, and he appeared "bluish around the lips." He was transported to a hospital where an emergency room doctor found that Antonio Jr. was not breathing on his own and showed no "signs of life." After being transferred to a better equipped hospital, Dr. David Jamovich examined Antonio Jr. and found his skull was fractured, his lungs were bruised, his brain was swollen, he had hemorrhages in his eyes, and some of his ribs and left arm were broken. Dr. Jamovich diagnosed the injuries as resulting from blunt force trauma and "a

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

brutal attack on this baby." The medical examiner determined Antonio Jr.'s death was a homicide.

¶ 5    When investigators first spoke to Richmond at his home, he stated that he had been sleeping with Antonio Jr. on his chest and the baby fell when he was awakened by a ring at the door. Later, Richmond agreed to speak with an Assistant State's Attorney (ASA). Initially, he stated that Antonio Jr. would not stop crying, so he put his hand over the baby's mouth, choked him, shook him, and slammed his head against a wall. In a subsequent statement, Richmond added that he punched Antonio Jr. in the stomach three times, dropped him on the kitchen floor, placed him face down on a chair and sat on his head and neck while rocking back and forth. Richmond stated that Antonio Jr. lost consciousness and, 30 minutes later, he called 911.

¶ 6    Richmond's cousin and aunt both testified that they were in the house that night, but they did not witness any of the actions described in Richmond's statements. Richmond testified, admitting that he shook, punched, dropped, and sat on Antonio Jr. He further admitted to twisting the baby's arm and hearing it break. He denied that he slammed Antonio Jr.'s head into a wall. Richmond insisted that he did not intend to kill or injure Antonio Jr. Richmond claimed that he had ingested PCP earlier in the evening.

¶ 7    Richmond's counsel argued that he should be convicted of involuntary manslaughter, rather than first degree murder. The trial court rejected that argument, finding it "not even close," and found Richmond guilty of first degree murder. The court added that Richmond's treatment of Antonio Jr. "staggers the imagination."

¶ 8    At his sentencing hearing, Richmond argued that his offense was mitigated by his young age, minor criminal history, and that he was "ultimately responsible for" his two other children, twins. The court stated that "the facts of the case are very aggravating" and remarked that "this is about the cruelest baby killing that I've ever had to preside over. What [Richmond] did to that

infant is just beyond despicable." Considering mitigation, the court noted that Richmond called for medical assistance, but added "[t]hat's about all the mitigation I can see in this." The court then sentenced Richmond to 40 years in IDOC. Richmond voluntarily dismissed his appeal. *People v. Richmond*, No. 1-07-0262 (order dated Sep. 10, 2007).

¶ 9        As we noted, Richmond filed his petition for postconviction relief in 2020, challenging the constitutionality of his sentence based on *Othman I*. The circuit court summarily dismissed the petition by written order. We allowed Richmond leave to file a late notice of appeal.

¶ 10                              II. ANALYSIS

¶ 11        Pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 2020)), an imprisoned person may file a petition to challenge their conviction or sentence by asserting that a substantial denial of rights afforded by the federal or state constitutions occurred in the proceedings that resulted in their conviction or sentence. *Id*. § 122-1(a)(1); *People v. Johnson*, 2021 IL 125738, ¶ 22. The Act contemplates three stages. *Id*. ¶ 24. At the first stage, the circuit court independently reviews the petition and determines if the petition is "frivolous or patently without merit." [Internal quotation marks omitted.] *People v. Tate*, 2012 IL 112214, ¶ 9. A petition is "frivolous or patently without merit" only if the petition has no arguable basis in law or fact. *Id*. (citing *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009)). If the circuit court so finds, it may summarily dismiss the petition by written order. *Hodges*, 234 Ill. 2d at 10; 725 ILCS 5/122-2.1(a)(2) (West 2020). We review the circuit court's summary dismissal of a postconviction petition *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 12        Preceding *Othman I*, the United States Supreme Court rendered several decisions premised on the recognition that "children are constitutionally different from adults for purposes of sentencing." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). Most relevant to this case, in *Miller*,

the Court held that the eighth amendment prohibits a mandatory sentence of life, without the possibility for parole, for juvenile offenders. *Id*. at 472. In applying *Miller*, our supreme court has extended the eighth amendment's protection to juvenile offenders sentenced to *de facto* life; that is, a term of years so long as to be the functional equivalent of life without the possibility of parole. *People v. Reyes*, 2016 IL 119271, ¶ 9. The court further found the protection applies to discretionary life sentences where the trial court failed to consider youth and its attendant characteristics before imposing the sentence. *People v. Holman*, 2017 IL 120655, ¶ 40. In sum, to prevail on a *Miller*-based claim, "a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *People v. Buffer*, 2019 IL 122327, ¶ 27. These eighth amendment protections apply retroactively to juvenile offenders sentenced before *Miller* was decided. *Montgomery v. Louisiana*, 577 U.S. 190, 208-09 (2016). Thus, a *Miller*-based claim may be raised in a collateral attack, such as the method provided by the Act. *People v. Davis*, 2014 IL 115595, ¶ 42.

¶ 13       Here, Richmond contends that his petition made an arguable claim that his sentence violates the eighth amendment and proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). He does not challenge the constitutionality of the sentence itself—a prison term of 40 years—only the requirement that, pursuant to the Truth in Sentencing Act, he serve the entirety of the term. He argues that the *Miller* line of cases indicate that juvenile offenders must be afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. The requirement that he serve the full sentence, he posits, forecloses such an opportunity as he will obtain release only upon completing the term, not upon demonstrating

maturity and rehabilitation. Such reasoning appeared in the vacated portion of *Othman I*, where a different panel of this court found that the Truth in Sentencing Act's requirement to serve the entirety of a prison sentence for first degree murder was unconstitutional as applied to juvenile offenders. *Othman I*, 2019 IL App (1st) 150823, ¶ 109 (such "juvenile defendants cannot, under any circumstances, demonstrate their potential for rehabilitation at any time prior to the completion of their sentence."). Richmond acknowledges that the vacated portion of *Othman I* is not precedential. He urges us, nevertheless, to adopt its reasoning. We decline to do so.

¶ 14    Richmond is not the first juvenile offender to request that the appellate court follow *Othman I*'s analysis of the Truth in Sentencing Act. The defendant in *People v. Brakes*, 2021 IL App (1st) 181737, asserted such a claim. Brakes was convicted of first degree murder and various counts of armed robbery and attempted armed robbery. *Id.* ¶ 1. He received 33 years for the murder and two six-year terms for the other offenses, all to be served consecutively for an aggregate term of 45 years. *Id.* ¶ 35. Pursuant to Truth in Sentencing, Brakes was required to serve 100% of the 33-year term, but he could receive up to 50% day-for-day credit on the six-year terms, resulting in the opportunity for release upon serving 39 years. *Id.* Brakes argued that this amounted to a *de facto* life sentence or, alternatively, that the Truth in Sentencing Act's requirement that he serve 100% of the murder sentence was unconstitutional. *Id.* ¶ 3. His Truth in Sentencing claim relied on the reasoning in *Othman I*. *Id.* ¶ 39. This court observed that even if *Othman I* were to be considered sound precedent, our supreme court effectively overruled it in *People v. Dorsey*, 2021 IL 123010. *Id.* ¶ 42. *Dorsey* held that a juvenile defendant's opportunity for release after 40 or fewer years is "the only relevant consideration" when evaluating whether the defendant's sentence violates the eighth amendment under *Miller*. *Id.* ¶ 34 (citing *Dorsey*, 2021 IL 123010, ¶ 64). Thus, the court remarked that "a juvenile defendant's sentence (whether served at 100%, 85%, or 50%)

may be subject to a constitutional challenge only if it will keep the juvenile in prison for more than 40 years." *Id*. ¶ 42. Since Brakes's sentence allowed for possible release after serving 39 years, his sentence was constitutional even if the 33-year term for murder had to be served in its entirety. *Id*.

¶ 15        Likewise, this court recently rejected a similar claim in *People v. Watson*, 2022 IL App (1st) 192182. There, the defendant was sentenced to a term of 32 years' imprisonment for first degree murder stemming from his act of fatally pushing a woman down the stairs of a CTA station after stealing a cell phone. *Id*. ¶¶ 4-5. Like Richmond, Watson filed a postconviction petition asserting that the Truth in Sentencing Act's requirement that he serve the entire sentence for an offense he committed at age 17 was unconstitutional. *Id*. ¶ 6. In appealing the circuit court's summary dismissal of his petition, Watson, like Richmond, urged this court to adopt the reasoning from the vacated portion of *Othman I*. *Id*. ¶ 20. Further, Watson argued that *Miller* principles required his sentence to allow an opportunity to obtain an early release even if the sentence did not amount to *de facto* life. *Id*. ¶ 22. Following *Brakes*, the court observed that "*Dorsey* makes plain *** that *Miller*-based claims cannot survive when the substantive sentence is not a *de facto* life sentence." *Id*. ¶ 27. As Watson's 32-year term did not amount to a *de facto* life sentence, the court concluded that he had not stated a viable as-applied constitutional challenge to the Truth in Sentencing statute. *Id*. ¶ 28. The court further remarked that, since Watson's prison term did not amount to a *de facto* life sentence, "the requirement that he serve 100% *** does not offend the principles set forth in *Miller*." *Id*. Accordingly, this court affirmed the circuit court's summary dismissal of Watson's postconviction petition. *Id*. ¶¶ 2, 36.[2]

_____

[2]*Brakes* was decided after Richmond filed his opening brief. Neither the State nor Richmond cited *Brakes* in subsequent briefing. *Watson* was decided after briefing was completed in this case. We also note that this court has rejected similar challenges to Truth in Sentencing in several unpublished orders. See *People v. Richblood*, 2021 IL App (1st) 201247-U, ¶ 25, *People v. Harris*, 2021 IL App (4th) 200095-U, ¶¶ 42-47; *People v. Butler*, 2021 IL App (1st) 200038-U, ¶ 23; *People v. Williams*, 2021 IL App (1st) 200213-U, ¶ 39; *People v. White*, 2021 IL App (4th) 200108-U, ¶¶ 26-31.

¶ 16    Based on this court's precedent, the pivotal question for our inquiry is whether Richmond's sentence amounts to *de facto* life. He asserts that it does since it is exactly 40 years. Our supreme court, however, resolved that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Buffer*, 2019 IL 122327, ¶ 41. The court drew the line for *de facto* life at 40 years upon finding that "a prison sentence of 40 years or less imposed on a juvenile offender provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." [Internal quotation marks omitted.] *Id*. Richmond contends that *Buffer* put a term of exactly 40 years on the unconstitutional side of that line. This court has concluded the opposite. *People v. Benford*, 2021 IL App (1st) 181237, ¶ 14 (finding that a sentence of exactly 40 years does not constitute a *de facto* life sentence); see also *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 63 (remarking "there is no way to interpret '40 years or less [does not constitute a *de facto* life sentence]' as '40 years or more [does constitute a *de facto* life sentence]' "). Accordingly, we reject Richmond's claim that he is subject to a *de facto* life sentence.

¶ 17    Since Richmond's sentence does not amount to *de facto* life, he cannot make an arguable *Miller*-based claim. *Watson*, 2022 IL App (1st) 192182, ¶ 27. We agree with *Brakes* and *Watson* that *Miller* does not extend relief to a juvenile defendant who is not subject to a *de facto* life sentence. Also like *Brakes* and *Watson*, we do not believe *Othman I*'s conclusion regarding Truth in Sentencing can withstand *Dorsey*. In *Dorsey*, our supreme court remarked:

    "we find that the more-than-40-years mark in *Buffer* is meant to be the line for a *de facto* life sentence where there is no opportunity to demonstrate rehabilitation and obtain release short of serving more than 40 years in prison. In other words, a judicially imposed sentence

that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Dorsey*, 2021 IL 123010, ¶ 64.

Those remarks necessarily imply that a sentence requiring a juvenile offender to serve their full sentence is constitutional so long as the prison term does not exceed *Buffer*'s 40-year line. Said another way, when a juvenile offender's sentence is 40 years or less, the eighth amendment does not require an opportunity to obtain early release upon demonstrated rehabilitation.

¶ 18    We further disagree that *Miller* and other decisions of the United States Supreme Court invalidate the Truth in Sentencing Act as applied to juveniles. In reaching its conclusion, the *Othman I* court stated "every major case on the issue of juvenile sentencing strongly condemns sentencing policies that prevent a juvenile from seeking to demonstrate rehabilitation and parole at some point during his prison sentence." *Othman I*, 2019 IL App (1st) 150823, ¶ 92. That court's reading of precedent from the United States Supreme Court found that the lack of the possibility of parole drove the Court's decisions. The cases the *Othman I* court relied on, however, concerned only the harshest of penalties—death or natural life without parole. *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force."); *Graham v. Florida*, 560 U.S. 48, 70 (2010) ("Life without parole is an especially harsh punishment for a juvenile;" "it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days.") (quoting *Naovarath v. State*, 105 Nev. 525, 526 (1989)); *Miller*, 567 U.S. at 472 ("these [mandatory life sentence] laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender."). Since our supreme court has found

that a sentence of 40 years or less is categorically not among the harshest of penalties, the circumstances supporting a constitutionally compulsory opportunity to obtain early release are not present when a sentence is 40 years or less. Thus, we reject the sweeping conclusion that *Miller* and related cases render the Truth in Sentencing Act unconstitutional as applied to juvenile offenders regardless of the actual sentence imposed. See *People v. Pacheco*, 2013 IL App (4th) 110409, ¶¶ 58-60 (rejecting similar *Miller*-based challenge to Truth in Sentencing by juvenile sentenced to 30 years for murder).

¶ 19    In addition, we do not find that the proportionate penalties clause requires a different result. After briefing was completed in this case, a panel of the Second District decided *People v. Hill*, 2022 IL App (2d) 200416, addressing this issue. The defendant in *Hill*, like Richmond, committed a murder at age 17 and was sentenced to a 40-year prison term. *Id*. ¶ 1. Hill claimed that Truth in Sentencing's requirement that he serve 100% of the prison sentence violated the proportionate penalties clause, which requires Illinois courts to consider both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." *Id*. ¶ 14; Ill. Const. 1970, art 1, § 11. Just as Richmond contends here, Hill argued the statutory mandate that he serve the full sentence disabled a court from crafting a sentence in accord with the proportionate penalties clause's rehabilitative goal. *Id*. ¶ 22. Although Hill only asserted a proportionate penalties claim, the court found that our supreme court's decisions in *Buffer* and *Dorsey* concerning eighth amendment arguments were relevant since both the proportionate penalties and eighth amendment arguments stem from *Miller*'s premise that juveniles "have a diminished culpability and greater prospects for reform." *Id*. ¶ 37 (quoting *Miller*, 567 U.S. at 471). Thus, irrespective of which constitutional provision the defendant relied on, the court found significant that Hill's 40-year sentence still provided a "meaningful opportunity to obtain release based on demonstrated maturity

and rehabilitation." *Id*. ¶ 36 (quoting *Buffer*, 2019 IL 122327, ¶ 41). Furthermore, the court found that Truth in Sentencing did not constrain the trial court since the court had discretion to sentence Hill within the applicable range and "had it determined that [Hill] should have a lower total sentence, it could have simply imposed a lower term of imprisonment." *Id*. ¶ 41. Ultimately, the court found that Truth in Sentencing does not violate the proportionate penalties clause as applied to Hill. *Id.*

¶ 20        Similarly, we do not believe that Truth in Sentencing violates the proportionate penalties clause as applied to Richmond. This court has recognized that the proportionate penalties clause affords greater protection against excessive punishment than the eighth amendment. *People v. Robinson*, 2012 IL App (1st) 192289, ¶ 46. However, we still take guidance from eighth amendment decisions when evaluating proportionate penalties claims. *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63. As we have found, Richmond cannot make an arguable eighth amendment claim since he is not subject to a *de facto* life sentence. Beyond that, Richmond cites no authority suggesting that the proportionate penalties clause would require a juvenile offender be afforded an opportunity for early release from a less than *de facto* life sentence where the eighth amendment would not. Despite the proportionate penalties clause's greater protection, a different result from the eighth amendment analysis is dubious since Richmond's proportionate penalties argument is based on *Miller* and does not substantially differ from his eighth amendment argument. To be sure, Richmond's claim essentially asks us to place greater weight on his rehabilitative potential than the seriousness of his offense. While the proportionate penalties clause requires consideration of both the seriousness of the offense and the objective of restoring the offender to useful citizenship, the provision does not require that the possibility of rehabilitating an offender be given greater weight than the seriousness of the offense. *People v. Taylor*, 102 Ill. 2d 201, 206

(1984). And even viewing his claim through the more protective lens of proportionate penalties, we cannot ignore that, as a matter of law, his sentence affords a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Thus, his sentence, even if it must be served in full, satisfies the restorative objective of the proportionate penalties clause.

¶ 21    Additionally, we note that the only offense for which the Truth in Sentencing Act requires 100% service is first degree murder. See 730 ILCS 5/3-6-3 (West 2020). For a sentence to violate the proportionate penalties clause, the punishment must be "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). This court's precedent has found that requiring an offender who committed first degree murder to serve their entire sentence does not meet that standard, even if the offender was a juvenile at the time. *Pacheco*, 2013 IL App (4th) 110409, ¶ 60. Here, Richmond's infant son, defenseless and completely dependent on his father for care, was crying, as infants do. In response, Richmond punched, choked, slammed his head into a wall, and sat with his full weight on the 13-pound baby. The trial court remarked that what the child must have endured staggered the imagination and that the killing was cruel. In contrast, the requirement that Richmond serve every day of his 40 years in prison is neither cruel, degrading, nor so wholly disproportionate to his brutal offense as to shock the moral sense of the community. See *People v. Harris*, 2018 IL 121932, ¶ 39 (an as-applied proportionate penalties challenge is dependent on the specific facts and circumstances of the defendant).

¶ 22                                III. CONCLUSION

¶ 23    For these reasons, we find that Richmond's postconviction petition has no arguable basis in law and affirm the circuit court's summary dismissal.

¶ 24    Affirmed.